# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**STEVEN DYE,**
**and PATRICIA DYE,**

               **Appellant/Cross-Appellee,**

    **v.**

**AMERIQUEST MORTGAGE COMPANY,**
**and AUSSPRUNG & ASSOCIATES,**

               **Appellees/Cross-Appellants.**

**Civil Case No. 07-C-430**
**(Bankruptcy Case No. 05-42502)**
**(Adversary Case No. 06-2087)**

---

# DECISION AND ORDER

---

        This matter is before the Court on the cross-appeals of Steven Dye and Patricia Dye (collectively "Dyes") and Ameriquest Mortgage Company ("Ameriquest") and Aussprung & Associates ("Aussprung") from the decision of the bankruptcy court dismissing, upon summary judgment, the Dyes' adversary proceeding against Ameriquest and Aussprung. Pursuant to 28 U.S.C. § 158(a)(1), this Court has jurisdiction to hear this appeal. The Dyes appeal from a final order of the bankruptcy court in a core proceeding under 28 U.S.C. § 157(b)(2)(I).

        The bankruptcy court's March 30, 2007, written order granting summary judgment references its determination at a March 26, 2007, hearing, that there was no genuine dispute of material fact and that the matter was appropriate for summary judgment. (Order Granting Defs.' Mot. Summ. J and Entering J. 2 (E.D. Wis. Bankr. March 30, 2007).) The bankruptcy court also indicated that, as stated in more detail at the March 26, 2007, hearing,

the Dyes filed their adversary action alleging violations of the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*., well outside of the TILA statute of limitations – both the one-year period stated in the statute and the three-year period applicable to rescission actions outlined in the case law. (*Id.*) The court further found that the circumstances of the case did "not call for equitable tolling." (*Id.*) While not expressly stated by the bankruptcy court, this Court interprets its written order as incorporating its oral decision which addressed and denied summary judgment under the *Rooker-Feldman* doctrine and the doctrine of *res judicata*, also known as claim preclusion.

Because the bankruptcy court's written order referenced its oral rulings in the March 26, 2007, hearing, and the Dyes cited excerpts from the transcript of that hearing in their reply/response brief (Docket No. 7), but the transcript was not part of the record on appeal, this Court ordered the bankruptcy court to provide it with a copy of that transcript. The transcript was filed on November 13, 2007.

### *Standard of Review*

On appeal in district court, a bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. *In re Midway Airlines, Inc.*, 383 F.3d 663, 668 (7th Cir. 2004). A grant of summary judgment will be affirmed if "there is no genuine dispute of material fact . . . and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

*Undisputed Facts*[1]

The Dyes, adult residents of Wisconsin, who wanted to refinance their home, came into contact with Ameriquest, a company which in the ordinary course of its business, regularly extends or offers to extend consumer credit for which a finance charge is or may be imposed or by written agreement that is payable in more than four installments. Ameriquest hired Aussprung, a business entity with its principal place of business in Cedarburg, Wisconsin, to conduct an appraisal of the Dyes' property.

On December 20, 2002, an appraiser from Aussprung conducted an appraisal inspection of the Dyes' property and the appraised value of that the property as of that date was $245,000. On December 24, 2004, the Dyes entered into a loan transaction ("subject loan") with Ameriquest to refinance their home. Ameriquest informed the Dyes of the results of the appraisal before they entered into the subject loan. At the closing on the subject loan, the Dyes were given a three-day Notice of Right to Cancel and a document entitled "Truth in Lending Disclosure."

Under the terms of the subject loan, Ameriquest loaned the Dyes the principal sum of $220,500. The Dyes were required to repay the loan with 359 monthly payments of $1,695.46 beginning on February 1, 2003 (plus one monthly payment of $1685.94 due on January 1, 2033). The Dyes made two of the scheduled monthly payments on the subject loan, before filing a petition under Chapter 13 of the Bankruptcy Code on October 16, 2005.

---

[1]These undisputed facts are based on the proposed findings of facts filed by Ameriquest and Aussprung in the adversary action pursuant to Civil L.R. 56.2(a) (E. D. Wis.). The Dyes did not file any response to those facts and pursuant to Civil L.R. 56.2(c), a court must conclude that there is no genuine material issue as to any fact set out to which no response has been filed. The bankruptcy court did not make formal findings of fact.

3

Ameriquest initiated foreclosure proceedings on the mortgage securing the subject loan and obtained a judgment of foreclosure from the Wisconsin circuit court. During the foreclosure proceedings, the Dyes raised allegations, entitled "Affirmative Defenses and Counterclaims" against Ameriquest, which were dismissed by the Wisconsin circuit court. The Dyes appealed the circuit court's order dismissing their affirmative defenses and counterclaims to the Wisconsin court of appeals which dismissed the appeal. The Dyes appealed the circuit court's order and judgment of foreclosure to the Wisconsin Court of Appeals, which summarily affirmed the circuit court's order. The Dyes filed a petition under Chapter 13 of the Bankruptcy Code on October 16, 2005, and initiated their adversary proceeding on February 1, 2006.[2]

### *Issues on Appeal*

#### *Timeliness*

In dismissing the adversary proceeding on summary judgment, the bankruptcy court held that the Dyes' adversary action was untimely. On appeal, the Dyes raise two issues: (1) whether their TILA claim is subject to the three-year bar set forth in *Beach v. Ocwen Fed. Bank*, 523 U.S. 410 (1998) and (2) whether the three-year limitation of 15 U.S.C. § 1635(f) is tolled by the pending class actions filed prior to the expiration of the Dyes' limitation period.

The TILA provides that when a loan made in a consumer credit transaction is secured by the borrower's principle dwelling, the borrower may rescind the loan agreement if the lender fails to deliver certain forms or to disclose certain important terms accurately.

---

[2]This agreed date is the date the Dyes filed their amended complaint. The adversary action against Ameriquest was filed on January 31, 2006.

4

*Beach*, 523 U.S. at 411. Under § 1635, the right of rescission "shall expire" in the usual case three years after the loan closes or upon sale of the secured property whichever date is earlier. *Id.* The issue in *Beach* was whether a borrower could assert a claim for recoupment as an affirmative defense to a collection action brought by the lender more than three years after the consummation of the transaction. *Id.* The Supreme Court answered the question in the negative holding that § 1635(f) completely extinguishes the right of rescission at the end of the three-year period. *Id.* The Supreme Court based its holding on the language of the statute, comparison of that language with the damages provision of § 1640(e), and the legislative history of the 1995 amendment to the TILA. *Id.* at 417-18.

The Dyes do not contest that their adversary action filed on January 31, 2006, was filed after the three-year period for rescission had expired on December 24, 2005. But, the Dyes maintain that this action is distinguishable from *Beach* on its facts because the disclosure statements provided by Ameriquest failed to accurately disclose the right to cancel and that, therefore, the three-year period should be tolled. The key to *Beach* is that it held that a right to rescind was extinguished after the three-year period. It did not hold that the three-year period was a statute of limitations. Since there is no right to rescission after the three-year period, equitable tolling is not applicable. The bankruptcy court's ruling on that ground is affirmed.

The Dyes also assert that the three-year limitation of 15 U.S.C. § 1635(f) is tolled by the pending class actions filed prior to the expiration of the Dyes' limitation period relying on *American Pipe & Construction Co*., 414 U.S. 538, 550-51 (1974), as expanded by

*Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983). In so contending, the Dyes assert that the claim in paragraph 26 of their amended complaint against Ameriquest for failure to accurately disclose their right to cancel because Ameriquest's provision of both the three-day and the seven-day notice of right to cancel was confusing, is also a claim that is included in Multi-District Litigation against Ameriquest and its subsidiaries in the Northern District of Illinois, *In re Ameriquest Mortgage Co., Mortgage Lending Practices Litigation*, Case No. 1:05-cv-07097 filed on December 20, 2005, and in *Luedtke v. Ameriquest*, Case No. 05-C-4644, which was filed in the Northern District of Illinois on August 12, 2005. The Dyes argue that because their action was filed prior to the certification or denial of the class in *Luedtke*, the limitations period has not expired.

This tolling issue was raised, in a fashion, by the Dyes in the bankruptcy court. However, the Dyes stated that "[t]his limitations period has been extended for one year, though, under **the doctrine of equitable tolling** as a result of the TILA class actions pending against Ameriquest in the Northern District of Illinois." (Debtors' Br. Resp. Mot. Summ. J. Ameriquest at 14 (citing *Crown, Cork & Seal Co.*, 462 U.S. at 354) (*Dye v. Ameriquest*, Case No. 06-02087 ("Adversary Action"), Docket No. 38).) (Emphasis added). The Dyes cited *Luedtke* and proffered a copy of the complaint filed in that action. (Wolk Aff. Supp. Pls.' [Resp.] Ameriquest Summ. J. (Adversary Action, Docket No. 38, Attach. ).)

The bankruptcy court did not discuss this specific contention in its written order or in its oral rulings. Several courts have held that an argument based on *American Pipe* and

*Crown Cork* is a "legal tolling" argument, which may apply to suspend the time for filing an

action for a statute of repose. As succinctly explained by another judge of this district court:

> The filing of a class action tolls a statute of limitations as to the members of the class from the time class certification is requested until such time as certification is denied, if that occurs. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350, 352-55, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Thereafter, class members must file individual suits to protect their interests. *American Pipe*, 414 U.S. at 554, 94 S.Ct. 756. Because a class action complaint "commences the action for all members of the class as subsequently determined," to hold that a period of limitations was not tolled in the interim would "frustrate the principal function of a class suit," as potential class members would be required to file individual actions or intervene to protect their rights. *American Pipe*, 414 U.S. at 550-551, 94 S.Ct. 756. The tolling rule is consistent both with Rule 23, which is designed to promote litigative efficiency and with the purposes of statutes of limitations, which are to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights. *Id.* at 554-56, 94 S.Ct. 756.
>
> Although the Supreme Court has held that equitable tolling does not apply to statutes of repose, *Lampf v. Gilbertson*, 501 U.S. 350, 363-63, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), that holding is not applicable to the present case because the tolling that plaintiffs seek is legal rather than equitable in nature. *Joseph v. Wiles*, 223 F.3d 1155, 1166-68 (10th Cir.2000); see also *Official Comm. of Asbestos Claimants v. Heyman*, 277 B.R. 20, 31 (S.D.N.Y. 2002); *In re Discovery Zone Sec. Litig.*, 181 F.R.D. 582, 600 n. 11 (N.D.

Ill.1998); *Salkind v. Wang*, No. 93-10812, 1995
WL 170122, *2-*3 (D. Mass. Mar. 30, 1995).

*Andrews v. Chevy Chase Bank*, *FSB*, 243 F.R.D. 313, 315-16 (E.D. Wis. 2007).

However, the legal tolling argument does not carry the day for the Dyes. Review of the *Luedtke* complaint discloses that the only reference to a class appears in a handwritten notation in the caption of the complaint beneath the names of the two plaintiffs that reads "and others similarly situated." The complaint includes no class allegations. The Dyes have not established that any proposed class was identified in *Luedtke*. Since the Dyes have not demonstrated that they were a member of a potential class in *Luedtke*, they have not demonstrated that the doctrine of legal tolling is applicable. Thus, the Dyes' appeal is denied in its entirety.

On appeal, Ameriquest asserts that the bankruptcy court erred in granting summary judgment in its favor based only upon the application of the three-year limitation for causes of action under the TILA. Ameriquest argues that the bankruptcy court should have applied the three-day limitation on a borrower's ability to exercise his or her TILA right of rescission, when the Dyes claim that rescission was made on January 31, 2006, and the Dyes have acknowledged under oath that they received all material disclosures and the TILA Notice of Right to Cancel at the loan closing on December 24, 2002.

The bankruptcy court determined that the Dyes' claims were time barred even by the TILA's most generous limitations period which is three years from the date of consummation. Ameriquest has cited no authority which requires a court to rule on all grounds presented by a motion for summary judgment. Having determined that the Dyes'

action was untimely even under the most generous limitations period, the bankruptcy court had no obligation to rule on a narrower and less expansive limitations period. Furthermore, application of the shorter limitations period was contested by the Dyes' claim of the conflicting and confusing seven-day and three-day notice of right provisions.

*Failure to State a Claim*

In a somewhat related vein, Aussprung contends that the bankruptcy court erred in not granting summary judgment on the ground that the Dyes failed to state a cause of action upon which relief can be granted under the TILA claim. Given the bankruptcy court's determination that the Dyes' TILA claim was time-barred, Aussprung's contention that the Dyes had failed to state a TILA claim was moot and there was no need for the bankruptcy court to address the issue.

*Res Judicata*

Both Ameriquest and Aussprung also contend that the bankruptcy court erred because it did not also grant summary judgment determining that the Dyes' action was barred by res judicata (also referred to as claim preclusion).

The Full Faith and Credit Act requires that the Court apply Wisconsin law and recognize the preclusive effect of the previous Wisconsin state court judgment in this proceeding. *In re Dollie's Playhouse, Inc.*, 481 F.3d 998, 1000 (7th Cir. 2007). Under Wisconsin law, the elements of claim preclusion are: "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and, (3) a final judgment on the merits in a court of competent jurisdiction."

9

*Wickenhauser v. Lehtinen*, 734 N.W.2d 855, 864 (Wis. 2007) (quoting *N. States Power Co. v. Bugher*, 525 N.W.2d 723 (Wis. 1995) (citing *DePratt v. W. Bend Mut. Ins. Co.*, 334 N.W.2d 883 (Wis. 1983)). In describing claim preclusion in general terms, the Wisconsin Supreme Court has stated, "'a final judgment is conclusive in all subsequent actions between the same parties [or their privies] as to all matters which were litigated or which might have been litigated in the former proceedings.'" *Id.* (quoting *N. States Power*, 525 N.W.2d 723 (alteration in original) (quoting *Lindas v. Cady*, 515 N.W.2d 458 (Wis. 1994)).

For the purposes of determining whether there is an identity of causes of action, Wisconsin has adopted the transactional analysis of claims from the *Restatement (Second) of Judgments* § 24 (1982). *Menard, Inc. v. Liteway Lighting Prods.*, 698 N.W.2d 738, 746 (Wis. 2005) (citing *DePratt*, 334 N.W.2d 883). "'Under this analysis, all claims arising out of one transaction or factual situation are treated as being part of a single cause of action.'" *Id.* (quoting *Parks v. City of Madison*, 492 N.W.2d 365 (Wis. Ct. App. 1992)). A transaction "'connotes a natural grouping or common nucleus of operative facts.'" *Id.* (quoting *Restatement (Second) of Judgments* § 24 cmt. b (1982)). To determine whether claims arise from one transaction, "we may consider whether the facts are related in time, space, origin, or motivation." *Id.* (citing *Restatement (Second) of Judgments* § 24 cmt. b (1982)). The Wisconsin Supreme Court has noted that under the transactional analysis, "it is irrelevant that 'the legal theories, remedies sought, and evidence used may be different between the first and second actions.'" *Id.* at 747 (quoting *Kruckenberg v. Harvey*, 694 N.W.2d 879 (Wis. 2005)); *see also N. States Power*, 525 N.W.2d 723 ("[T]he number of substantive theories that may

be available to the plaintiff is immaterial - if they all arise from the same factual underpinnings.") (citing *Restatement (Second) of Judgments* § 24 cmt. a (1982)).

While not included in its written order, at the oral hearing the bankruptcy court addressed the contention that the adversary action was barred by *res judicata*. (Adversary Action, Docket No. 81 (Tr. March 26, 2007, Proceedings) at 8-11).) The court determined that there was privity of the parties as to Dye and Ameriquest, and a final judgment in the foreclosure action. (*Id.* at 8.) The court noted that its finding as to privity did not apply to Aussprung. (*Id.*)

The bankruptcy court framed the following key question: "whether there was enough of similarity between the facts that gave rise to the state court action and federal court action to consider that this TILA claim should be precluded." (*Id.*) The court stated that "it's not entirely a factual analysis, of course there are also some legal elements, and you have to look at legally what was sought in state court and legally sought in federal court." (*Id.* at 9.) The court stated that it "is difficult for me to distinguish a huge factual difference that gave rise to the state court action and the factual scenario that gave rise to this one." (*Id.*) The court acknowledged that in the "federal court action, the plaintiffs have emphasized much more greatly . . . the facts underlying the particular TILA issues that have arisen and so there's been a lot more attention paid to, for example, the conflict between the three day right of recision [sic] and the seven day right of recision [sic], one provided by Ameriquest and the other [by] the statute . . . but the facts themselves are the same." (*Id.* at 9-10.) The court went on to state that "the legal issues of course are somewhat different, in part because of course

the Dyes were representing themselves in state court and so probably, like most people, didn't have a lot of knowledge about the TILA and how to articulate TILA claims and what the TILA required or didn't require. . . . So it is not clear to me at this point whether or not the Dyes were attempting to make a TILA claim in state court or not. (*Id.* at 10.) The court concluded: "All of this is by way of saying that in many ways this case does look to me like a case in which claim preclusion might apply, particularly because the same nucleus of facts has been involved in both, but there is I think somewhat of a distinction between the legal issues raised in state court and the legal issues raised here, and I am not going to grant summary judgment based upon claim preclusion because there just enough of that difference to get us there." (*Id.* at 11.) The court further stated that the other reason for not granting summary judgment on that ground was that the biggest problem presented was the statute of limitations. (*Id.*)

The parties' arguments center on whether there is identity of causes of action between the foreclosure action and the adversary action. Applying the transactional analysis of claims as adopted by the Wisconsin court, the Court concludes that there is an identity of claims between this adversary action and the foreclosure action because the TILA allegations arise out of the same operative facts, i.e., the mortgage agreement entered into between the Dyes and Ameriquest on December 24, 2002. The documents associated with the parties' contractual mortgage agreement were the foundation for the foreclosure action and the adversary action. *See A.B.C.G. Enters., Inc. v. First Bank. Se., N.A.*, 515 N.W.2d 904, 910 (Wis. 1994). That the legal theories employed or remedies sought may differ in each of the actions is not relevant to a transactional analysis of the claims. *See Menard*, 698 N.W.2d at

747. Accordingly, as to Ameriquest, all three elements of claim preclusion are present here. *See A.B.C.G. Enters.*, 515 N.W.2d at 909.[3]  Thus, the Court concludes that the bankruptcy court erred when it held that the Dyes' claims against Ameriquest were not barred by *res judicata*.

Aussprung was not a party to the state court action.  While Aussprung indicates that identity of parties need not be exact citing *Menard*, 698 N.W.2d at 745, it does not cite any Wisconsin case law indicating that a party in its position may rely upon *res judicata*.  Therefore, the Court affirms the bankruptcy court's determination that Aussprung  did not establish that the Dyes' action against it was barred by *res judicata*.

*Negligence Claim*

Aussprung also maintains that the bankruptcy court erred in not granting summary judgment dismissing the Dyes' negligence claim against it for failure to state a "prima facie case of negligence" against it and for lack of jurisdiction.  The Dyes conceded that the bankruptcy court would lose jurisdiction over such a claim if the Ameriquest claim was dismissed. (Debtors' Br. Resp. Mot. Summ. J. Aussprung 3. (Adversary Action, Docket No. 39).)  Given the stipulation of the Dyes and Aussprung that the claim would be subject to dismissal for lack of jurisdiction if the TILA claim was dismissed, it was not essential for the

---

[3]The parties do not address the Wisconsin law regarding claim preclusion and common law compulsory counterclaims.  *See Wickenhauser*, 734 N.W.2d at 864-69.  Therefore, the Court will not engage in an extensive discussion of the matter.  But, since the question is an additional factor in the analysis of *res judicata* when it is asserted against a plaintiff who was a defendant in the prior action, the Court notes that the circumstances of this action are analogous to those of *A.B.C.G.*, 504 N.W. 2d at 907-11, wherein the Wisconsin Supreme Court held that, following the entry of default judgment of foreclosure, a mortgagor's subsequent action against the mortgagee for misrepresentation, breach of contract, and failure to properly manage properties was barred by the compulsory counterclaim rule because a judgment in favor of A.B.C.G. would "directly undermine" the original default judgment in which the court foreclosed A.B.C.G.'s interest in the properties.

bankruptcy court to make an express ruling of dismissal of the negligence claim for lack of jurisdiction, when it granted the motion for summary judgment filed by Aussprung and entered judgment in its favor. Furthermore, given the stipulation for dismissal of the claim, the question of whether Dyes stated a cause of action for negligence against Aussprung was moot.

*Rooker-Feldman Doctrine*

Both Ameriquest and Aussprung contend that the bankruptcy court erred because it did not grant summary judgment determining that the Dyes' action was barred by the *Rooker-Feldman* doctrine. As will be further explained, in this Court's view, the *Rooker-Feldman* doctrine could have been dispositive of the entire adversary proceeding and led to its dismissal for lack of subject matter jurisdiction. Nonetheless, the Court notes that, without doubt, proper application of the doctrine is complex.

Citing the Dyes' initial adversary complaint as evidence of their intent and noting that their allegations are articulated somewhat differently in their second amended complaint, Ameriquest asserts that the Dyes' intent was to appeal the state court's ruling to the bankruptcy court. Similarly, Aussprung indicates that the Dyes came to the bankruptcy court and invoked the TILA to have the state court judgment reviewed. Both Ameriquest and Aussprung also assert that the bankruptcy action and the state court action are "inextricably intertwined" citing *Epps v. Credit Net, Inc.*, 320 F.3d 756, 759 (7th Cir. 2003).

The Dyes contend the bankruptcy court's denial of summary judgment under *Rooker-Feldman* should be affirmed, relying on a discussion of the *Rooker-Feldman* doctrine

provided by *In re Chinin USA*, *Inc.*, 327 B.R. 325, 334-36 (Bankr. N.D. Ill. 2005).[4]   They also rely on *In re Walker*, 232 B.R. 725, 731-33 (Bankr. N.D. Ill. 1999), which addresses compulsory counterclaims and *res judicata* under Illinois law; *Rooker-Feldman* is not discussed in the decision.  Finally, the Dyes rely on *In re Wescott*, 309 B.R. 308, 311 (E.D. Wis. 2004) which states, quoting *In re Clark*, 738 F.2d 869, 874 (7th Cir. 1984), "in Wisconsin, a foreclosure judgment does nothing but "judicially confirm the acceleration [of the mortgage debt]."

Federal courts are courts of limited jurisdiction. *See Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002).  ("Jurisdiction is the 'power to declare law,' and without it the federal courts cannot proceed." (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 583 (1999)).  Where *Rooker-Feldman* applies, the Court cannot reach any affirmative defenses.  *See Taylor  v. Fed. Nat'l Mortgage Ass'n*, 374 F.3d 529, 535 n.4 (7th Cir. 2004); *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996).

The namesakes for the *Rooker-Feldman* doctrine are two Supreme Court decisions, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923), in which the Supreme Court articulated, and applied, the rule that lower courts are precluded from exercising appellate jurisdiction over final state-court judgments.  The Supreme Court has highlighted the narrowness of the *Rooker-Feldman* doctrine. *See Lance v. Dennis*, 546 U.S. 459, 464 (2006); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005).   The only two

---

[4]*In re Chinin USA, Inc.*, 327 B.R. at 334-36, does not mention the "inextricably intertwined" aspect of the *Rooker-Feldman* doctrine.

times that the Supreme Court has applied the doctrine are in *Feldman* and in *Rooker*. *Exxon Mobil*, 544 U.S. at 283.

"Under the *Rooker-Feldman* doctrine, lower federal courts lack subject-matter jurisdiction when, after state proceedings have ended, a losing party in state court files suit in federal court complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Beth-El All Nations Church v. City of Chi.*, 486 F.3d 286, 292 (7th Cir. 2007) (citing *Exxon Mobil Corp.*, 544 U.S. at 284). In determining whether a federal plaintiff seeks review of a state-court judgment, the courts "ask whether the injury alleged resulted from the state-court judgment itself." *Id.* (citing *Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 701-02 (7th Cir. 1998)). If it does, *Rooker-Feldman* bars the claim. *Id.* (citing *Centres, Inc.*, 148 F.3d at 702). If the injury is independent of the state-court judgment, or if the federal claim alleges "a prior injury that a state court failed to remedy," *Rooker-Feldman* is no barrier to the federal suit. *Id.* *Rooker-Feldman* also applies to bar federal claims that are "inextricably intertwined" with a state-court judgment, unless the plaintiff lacked a reasonable opportunity to present those claims in state court. *Id.* at 292 (citing *Taylor*, 374 F.3d at 534-35; *Brokaw v. Weaver*, 305 F.3d 660, 668 (7th Cir. 2002); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 556-57 (7th Cir. 1999)).

At the oral hearing, the bankruptcy court stated that "because *Rooker-Feldman* is such a narrow doctrine, it is incumbent on [the] court to be absolutely certain that there was enough alignment . . . between what occurred in state court and what the Dyes seek to do in federal court . . . [to] be really certain that it was in fact an appeal of the state court decision."

(Adversary Action, Docket No. 81 (Tr. March 26, 2007, Proceedings) at 6.)  The bankruptcy court stated that "there are enough elements of differences between the actual TILA claims that are brought here in federal court and . . . the issues that the Dyes themselves raised in state courts, which weren't clearly articulated as TILA claims or other claims under other rights of action.  I think there are enough differences that I cannot at this point convince myself with certainty that the Dyes are, in filing this action, seeking a straight review of the state court decision."  (*Id.* at 7.)

The undisputed facts before the bankruptcy court do not provide detailed information about, or dates of, the state court proceedings and determinations.  However, the court documents, appended as exhibits to Ameriquest's brief in support of its motion for summary judgment filed in bankruptcy court and designated as part of the record on appeal (Adversary Action, Docket No. 29), provide essential supplemental information and this Court has considered those materials.[5]  *See Long*, 182 F.3d at 554 (stating that, on a Rule 12(b)(1) motion to dismiss, the district court may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists).

*Exxon Mobil*, 544 U.S. at 292, holds that *Rooker-Feldman* only applies if the state court proceedings have ended.  On June 8, 2005, the Wisconsin Court of Appeals issued its decision denying the Dyes' appeal from the summary judgment granting the judgment of

---

[5]In its initial appeal brief, Ameriquest provides a chronological table of the procedural history of the Dyes' claims since September 2003.  (Ameriquest's Br. 4-6.)  However, the cited materials do not support the dates which Ameriquest provides as the date for the filing of its foreclosure complaint and the Dyes' filing of their counterclaims, (*see id*. at 4.), and there are other dates for which no evidence is cited, (*see id*. at 4-5.)  Therefore, the Court has constructed its own chronology from the documents that are a part of the record on appeal.

17

foreclosure and the order dismissing their counterclaims and affirmative defenses. (Adversary Action, Docket No. 29, Ex. 12.) Adding the 30 days from the date of that decision within which the Dyes could have filed a petition for review with the Wisconsin Supreme Court pursuant to Wis. Stat. § 808.10,[6] the state court proceeding ended before the Dyes initiated this adversary proceeding on February 1, 2006.[7]

Next, the Court considers whether the Dyes' adversary complaint is a direct attack on the state court judgment. In the state foreclosure action, the Dyes filed a pro se answer, affirmative defenses, and counterclaims. (*Id.*, Ex. 9.). In answer to the complaint, the Dyes alleged that Ameriquest used a false appraisal to gain a higher interest rate and closing costs, and delayed the closing date by about a month, and that for about two months Ameriquest led the Dyes to believe that it would address the false appraisal. (*Id.*, Ex. 9 ¶¶ 3, 8.) As affirmative defenses and counterclaims, the Dyes alleged that despite Ameriquest's representation that it would Fed Ex them a copy of the appraisal within the seven-day cancellation period, Ameriquest sent them the appraisal after the expiration of the seven-day cancellation period. (*Id.*, Ex. 9 ¶¶ 14-15.) As a result of Ameriquest's delay and contrary to Ameriquest's best practices standards which states that it does not tolerate misrepresentation, the Dyes were mislead as to the higher value of their property. (*Id.*, Ex. 9

---

[6]*Exxon Mobil* does not indicate exactly what is to be considered in determining when state proceedings have ended. In *Rooker*, the party who had lost before the Indiana Supreme Court and failed to obtain review by the Supreme Court, filed an action in federal district court. *See Rooker*, 263 U.S. at 416. In *Feldman*, 460 U.S. at 476, the party who was refused admission to the District of Columbia bar by the District of Columbia Court of Appeals and failed to seek direct review by the Supreme Court, sought review by the federal district court.

[7]Ameriquest's chronology in its initial appeal brief indicates, without citation to any document, that the Dyes file a motion for reconsideration and a motion for relief pending decision with the Wisconsin Court of Appeals which it denied on July 6, 2005, and July 12, 2005. (Ameriquest's Br. 5.) If 30 days were added to the July 12, 2005, date, the state court action would still have "ended" prior to the commencement of the adversary action.

¶¶ 16-17.)  The Dyes also alleged that, contrary to Ameriquest's best practices standards, Ameriquest surpassed the agreed time for closing and took advantage of the Dyes' financial position.  (*Id.*, Ex. 9 ¶ 18.)

On January 21, 2004, the state circuit court issued a decision finding that the counterclaim was "not related to any defense against the foreclosure but seeks damages based upon a claimed misrepresentation."  (*Id.*, Ex. 10, 1.)  The state court addressed the viability of the Dyes' allegations under Wis. Stat. § 224.77, which provides a standard of conduct in mortgage banking and, while identifying several subsections relating to misrepresentations, held that an allegation of a violation of § 224.77 presents a counterclaim not an affirmative defense and that the Dyes had failed to state a claim for misrepresentation because the alleged misrepresentations relating to the appraisal were not material.  (*Id.*, Ex. 10, 2-4.)  The court stated that "even if a 'false promise' was made to produce the copy of the appraisal it did not induce the closing. It may have affected the rescission decision. There is no allegation in the complaint that the defendants had any intention to rescind."  (*Id.*, Ex. 10, 3.)  On February 6, 2004, the circuit court entered an order striking and dismissing the Dyes' affirmative defenses and counterclaims with prejudice. (*Id.*, Ex. 10, 6 (unnumbered).)  On April 8, 2004, the Wisconsin Court of Appeals dismissed the Dyes' appeal of that order as untimely, and advised them they could challenge the dismissal of their counterclaim in an appeal from the foreclosure judgment.  (*Id.*, Ex. 11, 2.)

On June 24, 2004, the state circuit court entered judgment and judgment of foreclosure granting summary judgment of foreclosure for Ameriquest and ordering that the

property be sold by the sheriff.  (*Id.*, Ex. 8.)  The Dyes again appealed the order striking their counterclaims and affirmative defenses to the foreclosure action.  (*Id.*, Ex. 12, 1.)  The Wisconsin court of appeals noted that the Dyes did not mention the ultimate summary judgment against them.  (*Id.*, Ex. 12, 2.)  The appeals court held that the Dyes elected not to pursue rescission during the closing period and went to the closing with full information.  (*Id.*, Ex. 12, 3.)  The appeals court agreed with the state circuit court's determination that the Dyes had failed to establish either affirmative defenses or counterclaims.  (*Id.*)

The Dyes' second amended complaint ("amended complaint") in the adversary action,[8] alleges, in detail, underlying facts of the loan transaction, the delay in providing the appraisal, and the state court foreclosure action.  (Am. Compl. ¶¶ 10-25).  The amended complaint alleges that Steven Dye ("Steven") was told that because the appraisal was too low, the loan terms would be less favorable.  (*Id.* at ¶ 14.) The Dyes also allege that they received the three-day notice of right to cancel as required by the TILA and a seven-day notice of the right to cancel which Ameriquest provides its customers.  (*Id.* at ¶ 17.)  The Dyes allege that the seven-day Ameriquest notice is illusory and confusing and, unlike the TILA three-day notice which excludes the day of the closing and excludes Sundays and holidays, counts the day of the closing and does not exclude Sundays and holidays and is confusing to consumers, especially because of the different manner in which time is calculated as compared to the TILA three-day notice, and has been held to violate the TILA.  (*Id.* at ¶ 19.)  The Dyes also

_____

[8]While Ameriquest suggests that the Court consider the Dyes' initial complaint in the adversary action in ascertaining their intent in filing the action, they cite no authority for that request.  That complaint was superceded by the amended complaint and the "prior pleading [was] in effect withdrawn as to all matters not restated in the amended pleading."  *See Duda v. Bd. of Ed. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998).  Therefore, the original complaint has not been considered by the Court.

allege that the state court did not address any claims under the TILA or under any other federal cause of action and that no such claims were pled by the Dyes. (*Id.* at ¶ 25.)

In their TILA claims, the Dyes allege that the provision of the conflicting three-day and seven-day cancellation notice was confusing and violates the purpose of the TILA. (*Id.* at ¶ 26.) The Dyes also allege it was clear from the beginning that the Dyes were not happy with the terms of their mortgage and that Ameriquest thwarted their efforts to determine the accuracy of Ameriquest's representations to them. (*Id.* at ¶ 27.) The Dyes allege that it is clear from the responsive arguments of Ameriquest that Ameriquest understands that the actions taken by the Dyes in filing the Chapter 13 proceeding was an exercise of their right of rescission. (*Id.* at ¶ 28.) The Dyes allege that they are entitled to a determination that they have properly rescinded any security interest held on their real estate by Ameriquest and that Ameriquest has no valid security interest and does not hold a valid secured or unsecured claim. (*Id.* at ¶¶ 29-30.) The Dyes also allege that they are entitled to an award of $2,000 in affirmative damages under 15 U.S.C. § 1635(b) for a failure to rescind under the TILA and recoupment of $2,000 per debtor for disclosure violations under 15 U.S.C. § 1640, as well as actual costs and attorney's fees. (*Id.* at ¶¶ 31-32, & 37.)

The Dyes also allege that Aussprung negligently breached its statutory and fiduciary duty to the Dyes to conduct the appraisal in a thorough and accurate manner by undervaluing the Dyes' real property which caused the Dyes to incur increased damages in the form of an increased interest rate and other less favorable loan terms. (*Id.* at ¶¶ 38-39.) The

Dyes seek recovery of damages from Aussprung which they sustained as a result of its negligence.

Based on its *de novo* legal consideration of the Dyes' adversary complaint and the proceedings of the prior state court action, the Court concurs with the bankruptcy court's legal determination that it is not entirely clear that the instant action seeks direct review or, as termed by the bankruptcy court "straight review,"of the state court proceedings. However, the bankruptcy court did not address another component of the doctrine: *Rooker-Feldman* may bar federal claims that were not raised in state court or that do not on their face require review of a state's court's decision if those claims are "inextricably intertwined" with state court proceedings. *Taylor*, 374 F.3d at 533.[9] Such a determination is "a complex question," because it is often "'difficult to distinguish' between situations in which the plaintiff is seeking to set aside the state court judgment and ones in which the claim is independent." *Brokaw v. Weaver*, 305 F.3d 660, 665 (7th Cir. 2002) (citations omitted).

Observing that "inextricably intertwined" is a "somewhat metaphysical concept," the court stated that the "'crucial point is whether the district court is in essence being called upon to review the state court decision.'" *Taylor*, 374 F.3d at 533 (quoting *Ritter v. Ross*, 992

---

[9]*Taylor*, 374 F.3d at 533-34, held that a mortgagor's federal action, brought after she had lost her home in a state court foreclosure action, seeking to have her home restored to her based on the foreclosing creditors' alleged fraud on the court, or in the alternative, to recover monetary damages under the Equal Credit Opportunity Act ("ECOA") in an amount equal to the value of her home, was barred by the *Rooker-Feldman* doctrine. As to the restoration of the mortgagor's home, the appeals' court held that claim was "tantamount to a request to vacate the state court's judgment of foreclosure." *Id.* at 533. As to the mortgagor's claim for damages under the ECOA, the court held that the compensatory damages sought by the mortgagor, the value of her home plus 10% interest per annum, demonstrated that her asserted injury was the loss of her home. *Id.* at 534. Lastly, the appellate court held that the mortgator's claim for monetary damages under 42 U.S.C. § 1985(3) based on the defendants' alleged conspiracy to deprive her of her home was not an independent injury arising from the acts of the defendants. *Id.*

F.2d 750, 754 (7th Cir. 1993) (quoting *Feldman*, 460 U.S. at 483-84 n.16)).  As articulated in

*Taylor*, the determination hinges on whether the federal claim alleges that the injury was

caused by the state court judgment, or alternatively, whether the federal claim alleges an

independent prior injury that the state court failed to remedy.  *Id.*  Once a court has decided

that a claim is inextricably intertwined; i.e., that it indirectly seeks to set aside a state

judgment, the court must then determine whether the plaintiff did not have a reasonable

opportunity to raise the issue in state court proceedings.  *Long*, 182 F.3d at 558.[10]  Usually, to

establish the lack of such an opportunity, federal litigants have identified "either some action

taken by the state court or state court procedures in place have formed barriers that litigants

are incapable of overcoming in order to present certain claims to the state court."  *Id.*  "[A]n

issue cannot be inextricably intertwined with a state court judgment if the plaintiff did not have

a reasonable opportunity to raise the issue in state court proceedings."  *Id.*

       Ameriquest maintains that the "injury alleged" in federal court is "inextricably

intertwined" with that previously adjudicated in state court – some sort of harm resulting from

the allegedly low value of the Dyes' property as determined by a third party appraiser and that

---

[10]In *Long*, 182 F.3d at 555-56, the appeals court held that Long who had been evicted from her subsidized apartment in state court proceedings was not barred by the *Rooker-Feldman* doctrine from bringing a federal court action against the defendants – the landlord, its principal, and its attorney for violations of the Fair Debt Collections Practices Act ("FDCPA"); the Illinois Consumer Fraud and Deceptive Business Practices Act ; and the Chicago Landlord Tenant Ordinance; with violating her rights under the Fifth and Fourteenth Amendments; and with breach of contract and common law fraud.  Long did not seek repossession or reversal of her eviction judgment; she sought damages for having been rendered homeless and jobless and the loss of the custody of her daughter as a result of an allegedly wrongful and fraudulent eviction.  The appellate court found that Long's claims were analogous to those which it had held barred by *Rooker-Feldman* in *Garry* , 82 F.3d at 1368-69; *GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 729 (7th Cir. 1993); *Ritter v. Ross*, 992 F.2d 750, 754-55 (7th Cir. 1993).  However, the appeals court concluded that because Long's claims could not have been presented to the Illinois Circuit  Court during the forcible entry and eviction proceedings, she did not have a reasonable opportunity to present her claims to the state court and therefore her claims could not be inextricably intertwined with the Circuit Court judgment.  *Long*, 182 F.3d at 560.

"the only thing" that has changed between the state and federal proceedings is the Dyes'

articulation of their remedy for Ameriquest's allegedly bad acts. This contention ignores that

the Dyes' federal court challenge includes factual allegations, not raised in the state action,

regarding confusion created by the TILA three-day notice and Ameriquest's seven-day notice.

However, the Dyes' request the bankruptcy court's permission to rescind their

loan and for statutory damages based on a failure to rescind. This would have the effect of

overturning the state court rulings in favor of Ameriquest on the foreclosure and the

counterclaims. The Dyes made no attempt to rescind the loan until after the state court entered

the foreclosure judgment. The Dyes' adversary complaint seeking a declaration that under the

TILA they have properly rescinded any security interest held on their real estate by Ameriquest

and that Ameriquest has no valid security interest, implicitly attacks the state court judgment

because such a declaration would void the Ameriquest lien foreclosed in state court. The

Court concludes that Dyes' injury stems from the foreclosure action and the essence of their

TILA claim for rescission would overturn the state court foreclosure. *See Taylor*, 374 F.3d

at 533-34. Therefore, such claims indirectly seek to set aside a state judgment. *See Id.*; *See

also Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1149 (10th Cir. 2004) (holding

that a federal court action seeking a declaration that property owner had rescinded his

assumption of a mortgage, pursuant to the TILA, thus removing any lien upon the property,

and the return of any money paid to the Defendants was asking that federal court undo the

effect of the state court default judgment foreclosing the mortgage and therefore barred by

*Rooker-Feldman*).

But, the Court must also consider whether the Dyes had a reasonable opportunity to raise the issue in state court proceedings. *Long*, 182 F.3d at 558. None of the parties directly address this question. Such an inquiry involves consideration of whether some action taken by the state court or state court procedures formed barriers that the Dyes were incapable of overcoming in order to present their claims to the state court. *See id*. "The judgment of foreclosure and sale determines the parties' legal rights in the underlying obligation and in the mortgaged property." *Shuput v. Lauer*, 325 N.W.2d 321, 325 (Wis. 1982). However, the federal and state courts have concurrent jurisdiction over the TILA claims. *See* 15 U.S.C. § 1640(e). Moreover, Section 840.03(1) of the Wisconsin Statutes provides that "any person having an interest in real property," may bring an action relating to that interest in which that person may demand a broad array of remedies "singularly, or in any combination, or in combination with other remedies not listed, unless the use of the remedy is denied in a specified situation." Subsection (2) of § 840.03 states that the "indication of the form and kind of judgment in a chapter dealing with a particular remedy shall not limit the availability of any other remedies appropriate to a particular situation." Demands for affirmative relief may be presented by counterclaim, where the defendant making the counterclaim has an interest in the premises and is entitled to make it. *See* 8 Edwin E. Bryant, *Callaghan's Wisconsin Pleading and Practice*, § 69:34 (4th ed. 2003-2004). There was a mechanism whereby the Dyes could raise their TILA claims as counterclaims in the foreclosure action.

The Dyes acknowledge that "they led a persistent, but, legally unsophisticated defense to the foreclosure." (Dyes' Reply/Resp. Br. 9.)[11]  There is no indication of any action taken by the state court or state court procedures that were barriers to the Dyes' presentation of their TILA claims in the state court foreclosure proceeding.  Thus, this Court concludes that the Dyes could have raised their TILA claims in the state court action.  *See McMahon v. Washington*, No. 05-C-122-S, 2005 WL 1648204 *2 (W.D. Wis. July 13, 2005); *see also*, John S. Goodland, *Mortgage and Land Contract Foreclosure in Wisconsin*, 21-22 (1989) (stating that a TILA is a possible defense to a mortgage foreclosure action).  Therefore, the Dyes' TILA claims are barred by the *Rooker-Feldman* doctrine.[12]

---

[11]*Brokaw*, 305 F.3d at 668, held that the plaintiff's federal claims of a conspiracy – prior to any judicial involvement – to cause false child neglect proceedings to be filed which resulting in her removal from her home in violation of her Fourth and Fourteenth Amendment substantive and procedural due process rights were not barred by *Rooker-Feldman*, in part because she did not have a reasonable opportunity to present her claims during the state court child neglect proceedings. The Illinois Juvenile Court Act did not provide the plaintiff with a mechanism to present a claim against her relatives and other state defendants for the violation of her constitutional rights, and at the first court proceeding when the, then minor, plaintiff was adjudicated a temporary ward of the state and directed to remain in foster care, the plaintiff was neither present nor represented by a guardian ad litem or an attorney. *Id.* Unlike the plaintiff in *Brokaw*, the Dyes were present and, as adults, could legally represent themselves.

[12]Though not binding, the Court's research also discloses determinations of other district courts within this circuit which have held that TILA claims are barred by *Rooker-Feldman. See Byrd v. Homecomings Fin. Network*, 407 F. Supp. 2d 937, 943 (N.D. Ill. 2005); *Spencer v. Mortgage Acceptance Corp.*, No. 05-C-356, 2006 WL 1302413,*4-*5 (N.D. Ill. May 4, 2006); *See McMahon v. Washington*, No. 05-C-122-S, 2005 WL 1648204 *2; *Thompson v. Ameriquest Mortgage Co.*,No. 03-C-3256, 2003 WL 22012207 *2-*3 (N.D. Ill. 2003).
    The issue has also been addressed in a number of decisions of bankruptcy and district courts in Pennsylvania. *See, e.g., In re Stuart*, 367 B.R. 541, 550 (Bankr. E.D. Pa. 2007); *In re Faust*, 353 B.R. 94, 100-01,103 (Bankr. E.D. Pa. 2006). *In re Stuart*, 367 B.R. at 550 n.6. joined other judges in that district in holding that the bankruptcy court lacks jurisdiction to consider a claim to enforce TILA rescission rights if a judgment in foreclosure has been entered prior to exercising rescission rights under TILA. *Id.* (citing *In re Cooley*, 365 B.R. 464 (Bankr. E.D. Pa. 2007); *In re Madera*, 363 B.R. 718, 723 (Bankr. E.D. Pa. 2007)). *In re Faust*, 353 B.R. at 101, concluded that TILA recoupment claims were not barred by *Rooker-Feldman* based on Pennsylvania court rulings that a defendant may not raise the TILA as a counterclaim in a mortgage foreclosure action. *Id.*
    The issue was also addressed in *In re Weinraub*, 361 B.R. 586, 593 (Bankr. S.D. Fla. 2007), which concluded that TILA claims were **not** inextricably intertwined with default state eviction proceedings.
    The current problems with the mortgage industry may presage an increased frequency of TILA claims in the aftermath of state foreclosure proceedings.

26

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The Dyes' appeal is **DENIED**;

Ameriquest's cross-appeal is **GRANTED** on grounds of the *Rooker-Feldman* doctrine and *res judicata* and **DENIED** in all other respects;

Aussprung's cross-appeal is **GRANTED** on grounds of the *Rooker-Feldman* doctrine and **DENIED** in all other respects;

The bankruptcy court's dismissal of the adversary action is **AFFIRMED**, but the bankruptcy court's determination that it did not lack subject matter jurisdiction under the *Rooker-Feldman* doctrine is **REVERSED**;

Alternatively, and in the event, it would be determined that the *Rooker-Feldman* doctrine does not bar the action, summary judgment dismissing the action is **AFFIRMED** on the ground that the TILA claims are untimely and because Aussprung and the Dyes stipulated that the court lacked subject matter jurisdiction over the negligence claims if the TILA claims were dismissed. An additional ground for granting summary judgment, rejected by the bankruptcy court, is that the Dyes' claims against Ameriquest are barred by *res judicata*; and,

This appeal is **DISMISSED**.

Dated at Milwaukee, Wisconsin this 17th day of December, 2007.

**BY THE COURT**


s/ Rudolph T. Randa
**Hon. Rudolph T. Randa**
**Chief Judge**

27